IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HALIMA ADAN and<br>DEMETRIUS BATCHELOR,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF PORTLAND, a municipal<br>Corporation, and JOHN DOES 1-2,<br>Officers of the Portland Police Bureau,<br><br>　　　　　　　Defendants. | Case No. 3:22-cv-01053-JR (Lead Case)<br>Case No. 3:22-cv-01054-JR (Trailing Case)[1]<br><br>OPINION AND ORDER |

RUSSO, Magistrate Judge:

Plaintiffs Halima Adan and Demetrius Batchelor filed separate actions against defendants the City of Portland ("City") and unnamed Portland Police Bureau ("PPB") officers under 42 U.S.C. § 1983 and state law arising out of alleged crowd control techniques used during a July 21, 2020, protest. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Defendants move for summary judgement pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendants' motion is granted.

---

[1] All citations are to documents in the lead case unless otherwise noted.

Page 1 – OPINION AND ORDER

## BACKGROUND

On the evening of July 21, 2020, plaintiffs were in downtown Portland during a large Black Lives Matter protest at the intersection of S.W. Third Avenue and S.W. Salmon Street. Late into the evening, federal law enforcement agents engaged with protestors, using crowd control munitions. While this engagement led to an initial dispersal of the protestors, the crowd returned, and this pattern of dispersal and re-engagement between protestors and federal agents repeated throughout the night and into the early morning of July 22, 2020.

Plaintiffs allege that during this period members of the PPB, Department of Homeland Security ("DHS"), and United States Marshals Service ("USMS") worked in concert to make "an announcement telling all unauthorized people to leave the area." Am. Compl. ¶ 12 (doc. 4). Shortly after this announcement, two tear gas canisters were fired at plaintiffs' vehicle, one of which shattered the windshield. *Id.* at ¶¶ 15-16. Defendants concede that federal agents took part in crowd control techniques throughout the stated time but maintain that no agent of the City or PPB was involved in any way. Defs.' Mot. Summ. J. 2-3 (doc. 41); Passadore Decl. ¶¶ 11-15 (doc. 42); Dobson Decl. ¶¶ 6-7 (doc. 43).

On July 19, 2022, plaintiffs initiated identical lawsuits that were subsequently consolidated. Plaintiffs allege the following claims under 42 U.S.C. § 1983: (1) viewpoint discrimination; (2) excessive use of force; and (3) municipal liability. Am. Compl. ¶¶ 32-42 (doc. 4). Plaintiffs additionally raise claims under Oregon common law for assault, battery, and negligence. *Id.* at ¶¶ 24-31.

On March 20, 2024, defendants filed the present motion for summary judgement. That same day, the Court issued a Summary Judgement Advice Notice, advising plaintiffs that if they did not submit their own "evidence in opposition, summary judgement, if appropriate" may be

issued against them. Summ. J. Advice Notice 1 (doc. 44). As of the date of this Opinion and Order, plaintiffs have not filed a response or otherwise opposed defendants' motion.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

This dispute centers on whether defendants' actions violated plaintiffs' state and/or federal rights. As an initial matter, the Court notes that plaintiffs' failure to prosecute their claims is, alone, sufficient to grant summary judgment. See Anderson, 477 U.S. at 252 (in order to defeat a motion for summary judgment "there must be evidence on which the jury could reasonably find for the [non-moving party]"); see also Justice v. Rockwell Collins, Inc., 117 F.Supp.3d 1119, 1134 (D. Or.

Page 3 – OPINION AND ORDER

2015), *aff'd*, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted).

I. **Federal Claims Against Individual Officers**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). It is undisputed that PPB officers are state actors for the purposes of 42 U.S.C. § 1983.

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government actor is entitled to qualified immunity, the court evaluates, in no particular order, whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A. **First Amendment Claim**

Viewpoint discrimination is "an egregious form of content discrimination" characterized by regulating speech based on the opinion or perspective of the speaker. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). To demonstrate viewpoint discrimination, the plaintiffs must show (1) "they were engaged in a constitutionally protected activity"; (2) the defendants' actions "would chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) "the protected activity was a substantial or motivating factor" in the

defendants' conduct. *Index Newspaper LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020).

Plaintiffs allege the "City allowed PPB, DHS, USMS team members, while working in concert, pursuant to PPB Directive 635.10 § 7, to violate [their] First Amendment right to peacefully assemble, express political opinions and petition the government for a redress of grievances when it promulgated a policy for the PPB, DHS, USMS via a training slide, to violently censor speech based on the content of the speech."[2] Am. Compl. ¶¶ 34-38 (doc. 4). However, plaintiffs offer no additional facts in support of these allegations, including in relation to the actions of any individual PPB officer.[3] And the purported "training slide" is not set forth in the complaint nor has not been submitted into evidence. At most, plaintiffs allege: "On or about Jan. 14, 2022, the public was made aware of training material intended for multiple agencies that provided officer training to PPB team members, and other teams working in concert with the PPB." *Id.* at ¶ 19.

Moreover, defendants have put forth evidence establishing that "[n]o agent of the City, PPB or otherwise, trained any federal or other entity on how to deploy teargas or otherwise perform[ed] crowd control at all, nor for the night in question." Defs.' Mot. Summ. J. 3 (doc. 41); *see also* Dobson Decl. ¶¶ 6-7 (doc. 43) (PPB "did not train, direct, or supervise any federal agencies on how to deploy, manage, or otherwise perform crowd control or perform any other public

---

[2] According to plaintiffs, this directive states, in relevant part: "The Bureau may request assistance from other law enforcement agencies . . . The Bureau [Incident Commander] shall maintain the authority to determine tactical objectives; direct the overall police response (all agencies); and determine, when objectively reasonable, how and when force may be used and when to deploy less lethal munitions to address civil disturbance and/or disperse the crowd." Am. Compl. ¶ 6 (doc. 4) (ellipses and brackets in original).

[3] To the extent plaintiffs' First Amendment claim is asserted under *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658 (1978), it also fails. Notably, plaintiffs offer no evidence the PPB directive itself would have a chilling effect on their speech, nor that the directive was aimed at censoring speech. Additionally, plaintiffs offer no evidence that the City controlled the named agencies or allowed them to violate plaintiffs' First Amendment rights.

Page 5 – OPINION AND ORDER

interactions" relating to the protests on the night of July 21 and morning of July 22, 2020); Passadore Decl. ¶ 14 (doc. 42) ("PPB did not coordinate or act in concert in any way with any other law enforcement agency, federal or otherwise" during the stated time).

Plaintiffs do not address this evidence or attempt to contest it. Even if well-plead, the complaint's allegations surrounding viewpoint discrimination cannot salvage plaintiff's § 1983 claims. See Celotex, 477 U.S. at 322 (summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial"); see also Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment"). Defendants' motion is granted in this regard.

B.   **Fourth Amendment Claim**

Excessive force claims are analyzed under the "objective reasonableness" standard, balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Graham v. Connor, 490 U.S. 386, 396 (1989); see also Don't Shoot Portland v. City of Portland, 2022 WL 2700307, *13 (D. Or. July 12, 2022) ("[t]he Fourth Amendment excessive force analysis turns on the specific circumstances of each use of force").

Plaintiffs allege that an unidentified PPB officer "used excessive force, that was not reasonable or necessary, when he fired a tear gas canister directly at [plaintiff's] vehicle . . . causing respiratory distress, eye pain, and skin irritation." Am. Compl. ¶ 42 (doc. 4). As addressed above, defendants have put forth evidence indicating that PPB was not present during any of the engagements between federal law enforcement and protestors on the dates in question, nor did

PPB deploy teargas or direct other individuals to deploy teargas. Given these undisputed facts, the Court cannot conclude that a Fourth Amendment violation occurred by the named defendants.

### C. Qualified Immunity

Even assuming plaintiffs established a violation of their First or Fourth Amendment rights, summary judgment is warranted on the basis of qualified immunity. A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). Plaintiffs have not cited to any authority even arguably indicating that defendants were on fair notice that their actions violated a clearly established law. *See Dist. of Columbia v. Wesby*, 583 U.S. 48, 63-68 (2018) (reversing the lower court, explaining it erred by not "considering the facts as a whole [and instead taking] them one by one" and "dismiss[ing] outright any circumstances that were susceptible of innocent explanation," and granting qualified immunity to the defendant officers where the plaintiffs never identified a single precedent – much less a controlling case or robust consensus of cases – finding a Fourth Amendment violation "under similar circumstances") (citations and internal quotations omitted).

### II. Municipal Liability Claims

A government entity may not be held vicariously liable for the unconstitutional acts of its employees under 42 U.S.C. § 1983. *Monell*, 436 U.S. at 694. To establish municipal liability, the plaintiff must demonstrate: (1) he was deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiff's constitutional rights; and (4) the policy, custom, or practice was the "moving force" behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted).

Page 7 – OPINION AND ORDER

A plaintiff may establish that the policy, custom, or practice was the cause of injury in three ways: (1) "a city employee committed the alleged constitutional violation pursuant to [either] a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and quotation marks omitted).

Plaintiffs allege that "the City, by and through members of PPB, DHS, and USMS working in concert, pursuant to PPB Directive 635.10 § 7, promulgated an official policy" that (1) "violently censored the content of free speech by promoting the battering and use of pepper spray on citizens, including [plaintiffs], who held a specific political viewpoint"; and (2) "allowed the use of tear gas on citizens, including [plaintiffs], in direct violation of a Court Order/Restraining Order issued by U.S. District Court Judge Marco Hernandez, on June 26." Am. Compl. ¶¶ 46, 48 (doc. 4). Additionally, plaintiffs allege the City "did not provide immediate supervision of the training of members of PPB, DHS, and USMS working in concert, pursuant to PPB Directive 635.10 § 7" and thus this made "John Doe #2, in his role as 'Portland Police Bureau Team Trainer,' a 'final policymaker.'" *Id.* at ¶ 50.

As discussed in Section I, plaintiffs have not demonstrated they were deprived of a constitutional right. Plaintiffs have also not put forth any argument or evidence establishing the City's supervision of the training of PPB or any other federal agency, or that John Doe #2 was a final policy maker. And, in any event, "[l]iability for improper custom may not be predicated on

Page 8 – OPINION AND ORDER

isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Further, based on their pleadings, it is unclear whether plaintiffs would have the Court find municipal liability by holding (1) PPB Directive 635.10 § 7 unconstitutional, or (2) the promulgation of PPB Directive 635.10 § 7 unconstitutional. However, there is no "rule that a municipality can be found liable under § 1983 only where the policy in question is itself unconstitutional." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386 (1989) (internal quotations and brackets omitted).

The second contention regarding promulgation is also unsupported. Even if this Court found a municipal official committed an unconstitutional act, plaintiffs have not presented the Court with any connection between that act and PPB Directive 635.10 § 7. Cf. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[o]bviously if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official . . . At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged"). Defendants' motion is granted as to plaintiffs' 42 U.S.C. § 1983 claims.

### III. State Law Claims

In addition to their federal claims, plaintiffs assert three state law claims for battery, assault, and negligence. Dismissal of plaintiffs' federal claims does not automatically deprive this Court of subject-matter. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Rather, where a district court dismisses "all claims over which it has original jurisdiction," it may, in its

discretion, "decline to exercise supplemental jurisdiction" over pendent state law claims. 28 U.S.C. § 1367(c)(3); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012).

Plaintiffs' lawsuits have been pending for nearly two years and they have each undergone the withdrawal of two attorneys. Additionally, plaintiffs are proceeding pro se at this point and one of them is currently housed at Oregon State Prison. Therefore, the Court retains jurisdiction of plaintiffs' pendent state law claims in order to resolve this lawsuit in its entirety. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) (retaining jurisdiction over pendent state law claims is appropriate where it serves the interests of efficiency and judicial economy).

### A.     Assault Claim

To prevail on an assault claim under Oregon law, a plaintiff must prove a person acted intending to either cause harmful or offensive contact with another person, or to cause another person apprehension of imminent harmful or offensive contact with that other person, and the other person reasonably believed a harmful or offensive contact would occur. *Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 47, 293 P.2d 717 (1956); Restatement (Second) of Torts § 21 (1965).

Plaintiffs allege they "reasonably feared immediate harmful contact when John Doe #1" – i.e., the federal agent who fired a tear gas canister directly at their vehicle, shattering the windshield. Am. Compl. ¶¶ 6, 27 (doc. 4) However, as addressed herein, the undisputed evidence demonstrates no PPB officer was engaged in the alleged acts constituting assault. And plaintiffs have not offered evidence regarding the intent of any PPB officer, which is a critical element. Defendants' motion is granted as to plaintiffs' assault claim.

### B.     Battery Claim

In Oregon, an action constitutes battery if it causes harmful or offensive contact, including physical impairment, physical pain, or illness. *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 330, 297 P.3d 1287 (2013) (citing Restatement (Second) of Torts § 18(1) (1965)). Battery "requires an

Page 10 – OPINION AND ORDER

actual intent not only to do an act but to cause personal injury." *Knight v. Durbin*, 2019 WL 3037046, *17 (D. Or. July 11, 2019) (citation and internal quotations omitted).

Plaintiffs assert that "John Doe #1, while working in concert with the PPB, pursuant to Directive 635.10 § 7, intended to and caused harmful physical contact with [them] without reasonable justification" by firing a tear gas canister directly at their vehicle. Am. Compl. ¶ 25 (doc. 4). As addressed herein, the undisputed evidence of record reflects that defendants were not involved in those actions. And evidence surrounding the requisite intent is once again lacking. *Cf. Redman v. Morehead*, 2012 WL 1253108, *3 (D. Or. Apr. 13, 2012) ("[a]llegations that a defendant engaged in an intentional act likely to result in [harmful or offensive] contact are not sufficient, and the ability of a court to infer subjective intent to cause harm is limited to situations where such intent is the *only* inference that may be drawn from the circumstances"). Defendants' motion is granted as to plaintiffs' battery claim.

C. **Negligence Claim**

To establish a claim for negligence, the plaintiff must show: (1) the defendant owed the plaintiff a duty, (2) the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff, and (3) the defendant's conduct in fact caused that kind of harm to the plaintiff. *Sloan on behalf of Est. of Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 642, 437 P.3d 1097 (2019) (citing *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987)).

Plaintiffs allege the City "failed to use reasonable care when they did not properly supervise the training of PPB, DHS, and USMS" officers at the July 21 and 22, 2020, protests, which "directly" lead to their injuries. Am. Compl. ¶ 30 (doc. 4).
Page 11 – OPINION AND ORDER

The uncontroverted evidence evinces that no agent of the City or PPB trained any federal or other entity on crowd engagement techniques. Defs.' Mot. Summ. J. 3 (doc. 41); Passadore Decl. ¶ 14 (doc. 42); Dobson Decl. ¶ 7 (doc. 43); *see also Chapman v. Mayfield*, 263 Or.App. 528, 537, 329 P.3d 12, 17 (2014) (a plaintiff must "come forward with sufficient evidence" at summary judgement to establish foreseeability). Likewise, neither the City nor PPB "had authority to direct" any federal agency, nor "any other entity on how to perform crowd control." Defs.' Mot. Summ. J. 3 (doc. 41); Passadore Decl. ¶ 14 (doc. 42); Dobson Decl. ¶ 7 (doc. 43). Defendants' motion is granted as to plaintiffs' negligence claim.

## CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (doc. 41) is granted, and this case is dismissed.

IT IS SO ORDERED.

DATED this 8th day of May, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 12 – OPINION AND ORDER